The Honorable Randy Johnson Representative, District 41 99 West Plant Street Winter Garden, Florida 34787-3127
Dear Representative Johnson:
You ask substantially the following question:[1]
Does Constitutional Amendment 4, which was approved by the electorate in 2004, require implementing legislation?
During the 2004 general election, the voters of Florida passed Amendment 4 which created a new section in Article X of the Florida Constitution. This provision, Article X, section 23, Florida Constitution, provides:
"(a) After voter approval of this constitutional amendment, the governing bodies of Miami-Dade and Broward Counties each may hold a county-wide referendum in their respective counties on whether to authorize slot machines within existing, licensed parimutuel facilities (thoroughbred and harness racing, greyhound racing, and jai-alai) that have conducted live racing or games in that county during each of the last two calendar years before the effective date of this amendment. If the voters of such county approve the referendum question by majority vote, slot machines shall be authorized in such parimutuel facilities. If the voters of such county by majority vote disapprove the referendum question, slot machines shall not be so authorized, and the question shall not be presented in another referendum in that county for at least two years.
(b) In the next regular Legislative session occurring after voterapproval of this constitutional amendment, the Legislature shall adoptlegislation implementing this section and having an effective date nolater than July 1 of the year following voter approval of thisamendment. Such legislation shall authorize agency rules for implementation, and may include provisions for the licensure and regulation of slot machines. The Legislature may tax slot machine revenues, and any such taxes must supplement public education funding statewide.
(c) If any part of this section is held invalid for any reason, the remaining portion or portions shall be severed from the invalid portion and given the fullest possible force and effect.
(d) This amendment shall become effective when approved by vote of the electors of the state."[2] (e.s.)
In Gray v. Bryant,[3] the Florida Supreme Court acknowledged the principle that the will of the people is paramount in determining whether a constitutional amendment is self-executing and directed that the language of the provision be examined to determine whether implementing legislation is necessary. The Court said:
"The basic guide, or test, in determining whether a constitutional provision should be construed to be self-executing, or not self-executing, is whether . . . the provision lays down a sufficient rule by means of which the right or purpose which it gives or is intended to accomplish may be determined, enjoyed, or protected without the aid of legislative enactment. . . . If the provision lays down a sufficient rule, it speaks for the entire people and is self-executing. . . . The fact that the right granted by the provision may be supplemented by legislation, further protecting the right or making it available, does not of itself prevent the provision from being self-executing."
As the Court acknowledged, a principal measure for determining this issue is the language of the constitutional provision itself.[4] If the language of the amendment is directed to the Legislature, or if it appears from the language used and the circumstances of its adoption that subsequent legislation was contemplated to carry it into effect, the amendment is not self-executing.[5] For example, in Williams v. Smith,[6] the Court stated:
"The language of [Art. II, s. 8(d)] is plain and unambiguous, unmistakably evincing a need for implementing legislation. Had the framers intended that conviction of a felony involving a breach of public trust would work an automatic forfeiture of retirement and pension benefits, it would not have been difficult for them to express that intent. . . Instead, they clearly deferred forfeiture to "such manner as may be provided by law", leaving to the Legislature the task of implementing the mandate of the people."
Similarly, in Attorney General Opinion 91-08 this office concluded that a constitutional amendment imposing a three-day waiting period for the purchase of handguns was not self-executing since the constitutional provision itself required the Legislature to enact legislation implementing the provision.[7]
The fact that the right granted by the provision may be supplemented by legislation, does not of itself prevent the provision from being self-executing.[8] However, in the instant case the constitutional amendment specifically recognizes that implementing legislation is required by directing the Legislature, in the next legislative session occurring after voter approval of the amendment, to adopt such legislation. The amendment requires that such legislation authorize agency rules for implementation and permits provisions for the licensure and regulation of slot machines as well as the taxation of slot machine revenues. Moreover, an examination of the ballot summary presented to the electorate clearly states that the amendment "[r]equires implementing legislation." Thus, it appears that the voters, in considering the amendment, were aware that it required implementing legislation.
Accordingly, I am of the opinion that Constitutional Amendment 4, which was passed by the electorate during the November 2004 general election, requires implementing legislation.
Sincerely,
Charlie Crist Attorney General
CC/tjw
[1] You also inquire whether a county could structure a contribution from a private person or corporation in such a manner that it can avoid section 100.011, Florida Statutes, which prohibits private persons or corporations from financing in whole or in part a county referendum election. The Division of Election of the Department of State, however, has addressed this issue. See Letter to the Honorable Randy Johnson from Dawn Roberts, Division Director, dated March 2, 2005. Pursuant to section106.23, Florida Statutes, the division is authorized to provide advisory opinions regarding the interpretation of the Florida Election Code of which section 100.011 is a part.
[2] This section was originally designated as s. 19 of Art. X, Fla. Const., by Amendment 4, 2004; it was redesignated as s. 23 by the Department of State, in order to avoid
confusion with an already existing s. 19, Art. X, Fla. Const., relating to the high speed ground transportation system.
[3] 125 So.2d 846, 851 (Fla. 1960).
[4] See generally, 16 C.J.S. Constitutional Law s. 46; Op. Att'y Gen. Fla. 77-136 (1977).
[5] Id.
[6] 360 So.2d 417, 420 (Fla. 1978). And see St. John Medical Plans,Inc. v. Gutman, 721 So.2d 717, 719-720 (Fla. 1998) (the need for implementing legislation is apparent based on the plain language of Art. II, s. 8[c] which states that the manner of recovery and additional damages may be provided by law; further, the section fails to provide necessary definitions nor does it set out any procedural guidelines);Advisory Opinion to the Governor, 706 So.2d 278 (Fla. 1997) (too many policy determinations remain unanswered . . . [such as the various] rights and responsibilities, the purposes intended to be accomplished, and the means by which the purposes may be accomplished).
[7] Compare Ops. Att'y Gen. Fla. 77-136 (1977) (since there is no language contemplating legislative action as a prerequisite to Art. II, s. 8(e), Fla. Const., having effect and since the language unambiguously provides a sufficient rule by which an individual may govern his conduct, the presumption that the provision is self-executing should prevail); 00-30 (2000) (Art. VI, s. 5(b), Fla. Const. is self-executing since there is no language contemplating legislative action as a prerequisite to the provision's having effect, and since the language unambiguously provides a sufficient rule by which the right it gives may be determined).
[8] Plante v. Smathers, 372 So.2d 933 (Fla. 1979); Williams v.Smith, supra.